

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 38th floor*
*New York, New York 10278*

January 17, 2025

**BY ECF**

Honorable Dale E. Ho
United States District Court Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *United States* v. *Eliezer Rondon*, S1 23 Cr. 634 (DEH)

Dear Judge Ho:

    The defendant in this case, Eliezer Rondon, is scheduled to be sentenced on January 24, 2025 at 2:00 p.m., having pled guilty to participating in a narcotics trafficking conspiracy, in violation of Title 21, United States Code, Sections 841(b)(1)(B) and 846, and knowingly using and carrying a firearm in furtherance of a drug trafficking crime, and aiding and abetting the same, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), and 2. The Government submits this letter in advance of sentencing and in response to the defendant's letter of January 10, 2025. (ECF No. 28). For the reasons discussed below, the Government respectfully submits that a sentence within the stipulated Guidelines range of 144 to 165 months' imprisonment (the "Stipulated Guidelines Range"), as agreed to by the parties, is warranted in this case.

    **I.**    **Offense Conduct**

    Background

    The charges against the defendant arose from his membership the Shooting Boys gang. (PSR ¶ 10). The Shooting Boys is a violent street gang that operates primarily in and around the University Heights section of the Bronx. (PSR ¶ 11). Rondon and his fellow gang members used guns to commit numerous acts of violence against members of rival gangs throughout the Bronx. (PSR ¶¶ 10-11). The Shooting Boys were originally associated with the Trinitarios gang but broke off from the Trinitarios in or about 2017. (PSR ¶ 10). The gang dealt drugs, used guns to shoot at members of rival gangs, commit robberies of rival drug dealers and members of the public, and protect their drug territory through violence. (PSR ¶¶ 10-11). For the most part, gang members sold drugs in two areas – Father Zeiser Place and 192nd Street and Aqueduct Avenue in the Bronx. The gang protected its drug territory through violence and intimidation. (PSR ¶ 11). As a member of the Shooting Boys, the defendant sold drugs and committed acts of violence. (PSR p. 29).

    October 10, 2020

    On October 10, 2020, security camera videos (the "Security Camera Videos") obtained by law enforcement from a parking garage located at 1545 Jerome Avenue, Bronx, New York

Hon. Dale E. Ho
January 17, 2025
Page 2 of 7

captured a black Jeep Cherokee (the "Cherokee"), followed by a black BMW (the "BMW"), pull up to the garage entrance at approximately 4:25 a.m. The driver of the Cherokee, Tomy Aponte-Fernandez, got out of the driver's side of the vehicle and greeted an employee of the garage, "Employee-1." The driver of the BMW, Arfhy Santos, a/k/a "Coyote" exited his car and greeted Aponte-Fernandez and Employee-1 while they spoke at the front entrance of the garage. Employee-1 got into the Cherokee and parked it inside of the garage. While Employee-1 was parking the Cherokee, Santos walked back to the BMW. Before Santos got into the BMW, another man Jeorge Santana-Sanchez, a/k/a "Machiavelli" exited the passenger's side of the BMW. After Santana-Sanchez got out, Santos drove the BMW into the garage. Santos and Employee-1 then walked out of the garage and met up with Aponte-Fernandez and Santana-Sanchez. While the four men were talking, a dark colored SUV (the "SUV") drove into the apron area of the garage. The SUV was occupied by a male driver and female passenger. Seconds later, a black Dodge Durango (the "Durango") drove up behind the SUV. The driver of the Durango got out of the car and fired multiple gunshots in the direction of Aponte-Fernandez, Employee-1, Santana-Sanchez, and Santos – all of whom were congregated in front of the parking garage. As the shots were being fired, Santos ran into the garage and took cover behind the BMW. Sanatana-Sanchez was shot in the right leg and retreated into the office area of the garage. Santos followed Sanatana-Sanchez into the office and came out several seconds later and retrieved a firearm from the BMW. Santos chased after the Durango as it fled down Jerome Avenue, and fired multiple gunshots at the vehicle as it sped away.

Aponte-Fernandez was shot once in the left leg. Employee-1 was shot four times – in the face, abdomen, hand, and leg. Santana-Sanchez was struck once in the upper right leg. Santos was not struck by any of the gunfire. All of the victims survived their injuries. Several bullets passed through the SUV as the occupants were seated inside but none of the bullets struck either occupant. The male driver suffered cuts from the window glass that was shattered by the gunfire.

The Security Camera Videos captured the defendant's black Dodge Durango pull up to the apron of the garage and the defendant get out and fire multiple gunshots in the direction of the group of people, including Santana-Sanchez, Santos, Aponte-Fernandez, and Employee-1 (pictured below). (ER_000418). Attached as Exhibit A is a compilation of relevant portions of the Security Camera Videos for the Court's review.



Hon. Dale E. Ho
January 17, 2025
Page 3 of 7

The video also recorded the moment when both Santana-Sanchez and Employee-1 were shot and fell to the ground (pictured below). (*See* ER_000417).



Santos was captured firing multiple shots at the Durango as it fled the area (pictured below). (*See* ER_000418)



After firing the shots at the Durango, Santos went back into the garage to assist the injured Santana-Sanchez (pictured below). (*See* ER_000417).



Identification of Rondon as the Shooter

*Jail Calls*

Beginning in or about September 2020 through at least in or about October 2020, an inmate ("Inmate-1") at Riker's Island jail facility placed dozens of calls to the defendant. Inmate-1 is a member of the A-Town Trinitarios. All of the jail calls were recorded. The following is a synopsis of one of those conversations, which included statements the defendant made about his involvement in the October 10, 2020 shooting.

The defendant told Inmate-1 that he "hit" Machiavelli and Tomy[1] at the parking lot near Walton Avenue. Rondon described how he drove a Dodge Durango during the job and that he could see "Machia" squirming on the ground after he shot him. The defendant described how he sent a female into the garage to distract the employees. Rondon simulated the sound of a gun being fired numerous times and went on to tell Inmate-1 that a video of the shooting was being carried on all of the local television news channels. Rondon told Inmate-1 that Machia is going to be in intensive care. (USAO_015174).

*Government Witness*

The day after the October 10, 2020 shooting, the defendant met with a fellow member of the Shooting Boys ("CW-1"). CW-1 got into the defendant's car and as the two of them drove around the neighborhood, the defendant told CW-1 how he shot at two members of A-Town, "Coyote" and "Machiavelli," the night before. The defendant told CW-1 that he was involved in a drug deal with Coyote and Machiavelli and that they refused to pay the defendant his full share of the deal. Rondon told CW-1 that he was driving a Dodge Durango and that when he passed by the garage on Jerome Avenue, he saw Coyote and Machiavelli standing out front. Rondon described how he used a 9MM pistol and fired numerous times at the two and that he hit Machiavelli. The defendant showed CW-1 a video of the shooting that could be found on social media. As the two watched the video together on CW-1's cell phone, the defendant walked CW-1 through the shooting and identified himself, Coyote, and Machiavelli in the video pointing to the individual firing the gunshots. The defendant said that he fired more than fifteen times at Coyote and Machiavelli and used a 9MM Space pistol with a thirty-round magazine, which he offered to give to CW-1. The defendant said that he was accompanied by a female during the shooting, and that he parked the Durango in White Plains after the incident and left it there.

II.     **Procedural History**

On September 12, 2024, a Superseding Information was filed in this district which charged the defendant with: (1) narcotics conspiracy, in violation of Title 21, United States Code, Sections 841(b)(1)(B) and 846, and knowingly using and carrying a firearm in furtherance of a drug trafficking crime, namely the narcotics conspiracy charged in Count One, and aiding and abetting

---

[1] As noted above, "Tomy" is the first name of Aponte-Fernandez, and Santana-Sanchez goes by the street name "Machiavelli."

the same, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), and 2. (PSR ¶¶ 1-3). The defendant pled guilty to those charges that same day. (PSR ¶ 6).

In the plea agreement, the defendant admitted to his participation in the October 10, 2020 shooting of a rival drug dealer. (Plea Agreement at 1 n.1 and PSR ¶ 7 n.1). The parties further stipulated that the applicable Guidelines offense level for Count One is 23 and that the defendant is in criminal history category V resulting in a Guidelines range of 84 to 105 months' imprisonment for Count One. The Guidelines range for Count Two is the statutory mandatory minimum term of 60 months', which must run consecutive to any other term of imprisonment imposed, resulting in a total Stipulated Guidelines Range of 144 to 165 months' imprisonment.

On December 20, 2024, the Probation Office issued its final Presentence Investigation Report. Probation's Guidelines calculation differed from the parties in that Probation assigned an additional three criminal history points for a March 11, 2022 conviction in Bronx County Supreme Court. (PSR ¶ 95). These additional criminal history points increased the defendant's criminal history category to VI, which resulted in an increased Guidelines range of 92 to 115 months' imprisonment for Count One. (PSR ¶¶ 48, 94-95). With the increased Guidelines range for Count One, Probation calculated a total Guidelines range of 152 to 175 months' imprisonment after including Count Two's statutory mandatory minimum. (PSR ¶ 95).

Because the records available to the Government at the time the plea agreement was signed indicated that the March 11, 2022 conviction had been vacated, the parties' calculation did not assign any criminal history points, pursuant to U.S.S.G. § 4A1.1(a). Probation informed the Government that it had confirmed the disposition of this conviction with the Bronx County Supreme Court. (PSR ¶ 45). While the Government does not disagree with Probation's calculation, its position remains the same that a sentence within the Stipulated Guidelines Range of 144 to 165 months' imprisonment is appropriate in this case. It is worth noting that Probation's recommended sentence of 152 months falls within the parties' Stipulated Guidelines Range. (PSR p. 28).

### III. A Sentence Within the Stipulated Guidelines Range of 144 to 165 Months' Imprisonment Is Necessary

As the Court well knows, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 596. After that calculation, however, the Court must consider the seven factors outlined in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, the need to adequately deter criminal conduct and promote respect for the law, and the need to provide restitution to victims. *Id.* at 50 & n.6.

Here, these factors weigh heavily in favor of a significant term of imprisonment, one within the Stipulated Guidelines Range of 144 to 165 months' imprisonment.

*Nature and Seriousness of the Offense and Adequate Punishment*

A sentence within the Stipulated Guidelines Range is necessary to reflect the seriousness of the defendant's conduct and to provide adequate punishment. Rondon was a member of the Shooting Boys gang. The name chosen for the gang was not an accident—the Shooting Boys engaged in a level of gun violence that was high even in the violent world of New York street gangs. And, the defendant lived up to the name. There is no clearer illustration of the defendant's dangerousness than his participation in the October 10, 2020 shooting of three people on a public street. Rondon fired multiple gunshots at a group of individuals – most of whom were not his intended targets or even members of a gang – they were innocent bystanders who had nothing to do with the defendant's grievances, all because he wanted to extract revenge for a drug deal gone bad. The defendant's utter disregard for human life is captured in the various security camera videos law enforcement personnel obtained during their investigation. (*See* Ex. A). The graphic nature and wantonness of the defendant's actions can be seen first-hand and explain law enforcement's recovery of thirty-six shell casings from the crime scene that day.

Not to be overlooked is the fact that the defendant was involved in a prolific drug operation that sold large quantities of cocaine. Cocaine and crack cocaine continue to be a scourge on communities nationwide, including the Bronx neighborhoods where Rondon sold his deadly wares. Rondon chose to personally profit from that epidemic – nurturing deadly drug habits without regard for the users themselves or their families and friends who also suffer. Worse still, Rondon did so while possessing and using dangerous firearms. Drug dealing and violence often go hand-in-hand as drug dealers attempt to protect and/or seize lucrative drug territory. Rondon's possession and use of a firearm made clear that he was both ready and willing to resort to violence to keep his business going.

*Protection of the Public and Deterrence*

A significant sentence is also needed to protect the public, and deter the defendant from committing additional crimes of a similar nature – crimes the defendant has engaged in repeatedly over the last few years. To be sure, this is not the defendant's first brush with the law. Rondon has seven prior criminal convictions as an adult and one juvenile conviction. (PSR p. 29). The defendant's convictions include two for narcotics-related offenses and, notably – two for possession of firearms. (PSR p. 29). Conduct not dissimilar to the instant offenses. (PSR ¶¶ 39-45). Notably, Rondon was arrested a little more than two months after the October 10, 2020 shooting when he was found in possession of a loaded Ruger pistol only a short distance away from where the instant offense took place.

The defendant's disciplinary record during the various periods of incarceration is further evidence of his unwillingness or inability to comply with society's rules. Rondon has been cited for over a dozen disciplinary violations while in both state and federal custody. (PSR ¶¶ 8, 40, 44, 45). Several of these infractions are for aggressive or violent conduct.

Hon. Dale E. Ho
January 17, 2025
Page 7 of 7

*Promote Respect for the Law*

    A substantial term of imprisonment is also necessary to promote respect for the law—goals that clearly were not accomplished by the defendant's previous state court sentences. Looking beyond the defendant himself, there is a strong need for general deterrence—*i.e.*, for those gang members that remain at large in the community over whom the defendant may hold sway and who continue to engage in repeated cycles of violence and drug dealing. It is important for them to learn that such activity will not be tolerated and will result in a lengthy prison sentence if prosecuted in federal court.

**IV.    Conclusion**

    For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range of 144 to 165 months' imprisonment.

Very truly yours,

EDWARD Y. KIM
Acting United States Attorney

by: _____
Dominic A. Gentile
Jim Ligtenberg
Assistant United States Attorneys
(212) 637-2567 / 2665

cc: Natali Todd, Esq. (Via ECF)
    Emilee Sahli, Esq. (Via ECF)